UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                              Case No. 08-20573

LARRY ARDEL UMPHRYES,          Hon. Sean F. Cox

      Defendant.

_____/

## OPINION & ORDER
## ACCEPTING MAGISTRATE JUDGE'S RECOMMENDATION

Defendant Larry Umphryes ("Defendant") is charged in a single-count indictment with being a felon in possession of a firearm (Doc. No. 1). The case is currently before the Court for consideration of Defendant's Objections to Report and Recommendation on Defendant's Motion to Suppress (Doc. No. 21). For the reasons that follow, the Court shall ACCEPT the Magistrate Judge's recommendation that the Court DENY Defendant's Motion to Suppress.

BACKGROUND

On December 9, 2009, Defendant filed a Motion to Suppress Evidence, claiming that the police violated his Fourth Amendment rights (Doc. No. 10). This Court entered an order referring the motion to Magistrate Judge Hluchaniuk (Doc. No. 11).

On January 28, 2010, Magistrate Judge Hluchaniuk held a hearing at which time both parties were permitted to call witnesses and present evidence. The parties also filed post-hearing briefs (Doc. Nos. 18 & 19).

1

Relevant Facts

On March 15, 2008, at approximately 10:00 p.m., Defendant was riding in the front-passenger seat of a 2000 Pontiac. (Tr. at 7:7). Michigan State Police Troopers Swain and Stokes observed the Pontiac turn without using a signal, and they initiated a traffic stop. (*Id.* at 6:24-7:1).

Trooper Swain approached the driver's side of the Pontiac while Trooper Stokes approached the passenger side. (*Id.* at 9:21-25). Trooper Stokes asked Defendant for his name, but Defendant gave a false name, Timothy Johnson. (*Id.* at 10:7-9; 32:16-17). Trooper Stokes also observed that the Defendant was "extremely nervous." (*Id*. at 10:13).

At that time, Trooper Stokes noticed that Defendant was holding his arm tightly against his side, which Trooper Stokes noted was typical for someone who is hiding contraband or a weapon. (*Id.* at 10:10-13). Moreover, Defendant kept his arm pressed against his side when he lit a cigar, leaning forward to light it rather than bringing it up to his mouth. (*Id.* at 11:1-6). Trooper Stokes described this as a highly unusual motion. (*Id.* at 12:2).

While Trooper Stokes spoke with Defendant, Trooper Swain arrested the driver for operating a motor vehicle without a license. (*Id.* at 9:19). After the driver's arrest, the troopers decided to search the Pontiac. (*Id.* at 14:1-2). Trooper Stokes asked Defendant to step out of the car, and asked him if he had any contraband or weapons on him. (*Id.* at 13:15-24). Defendant exited the Pontiac and replied that he did not have anything illegal on him. (*Id.* at 13:18).

Trooper Stokes then placed Defendant's hands on the top of the Pontiac and informed Defendant that he was going to conduct a pat-down search. (*Id.* at 14:12-13; 15:1-2). He immediately frisked the side of Defendant's body and discovered a handgun in Defendant's coat

pocket, which he removed without Defendant's knowledge. (*Id.* at 14:19-22).

Trooper Stokes then gestured for Trooper Swain to come over, and gave him the handgun. (*Id.* at 15:13-19). As Trooper Stokes began to handcuff Defendant, Defendant elbowed him in the face and ran away. (*Id.* at 15:25-16:3). Trooper Stokes unsuccessfully attempted to stop Defendant by deploying his taser, but Defendant was able to run behind a near-by house. (*Id.* at 16:10-12). Rather than chase Defendant, Trooper Stokes waited for back-up. (*Id.* at 16:12-15).

The troopers asked the driver for Defendant's real name, and the driver replied that it was "Umphryes." (*Id.* at 17:11-15). Using their patrol vehicle's computer, the troopers searched for, and discovered, outstanding warrants for Defendant. (*Id.* at 18:3-5).

Additional officers arrived to search for Defendant, and found him hiding under a parked car. (*Id.* at 16:12-15). The police then arrested Defendant. (*Id.* at 17:4-5).

ANALYSIS

On March 19, 2010 Magistrate Judge Hluchaniuk filed his Report and Recommendation ("R & R") (Doc. No. 20), which concludes that Defendant's search was constitutionally permissive under *Terry v. Ohio*, 392 U.S. 1 (1968), and alternatively, that the handgun should be admissible under the inevitable discovery doctrine. Defendant objects to both recommended bases for denying his motion.

In objecting to the R & R, Defendant argues that his search was not permissible under *Terry*, because Trooper Stokes did not have a reasonable suspicion that Defendant was armed and dangerous.

The Supreme Court recently held, "[T]o justify a patdown of . . . a passenger during a

3

traffic stop, . . . the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 129 S.Ct. 781, 784 (2009).

In making this determination, an officer "need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safely or that of others was in danger." *Terry*, 329 U.S. at 27. Police officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. *United States v. Shank*, 543 F.3d 309, 315 (6th Cir. 2008). The officer may not, however, rely on an inarticulate hunch. *Terry*, 329 U.S. at 22.

Trooper Stokes testified that he had received training to recognize contraband on suspects. (Tr. at 25:22-23). He also observed that Defendant was "extremely nervous" (*Id.* at 10:13), and that he kept his arm pressed closely against his side, and held this position even while he lit his cigar. (*Id.* at 10:10-11; 11:1-6). Trooper Stokes testified that this is typical for somebody who is hiding a weapon. (*Id.* at 10:12-13). He further noted that the traffic stop occurred in a "high-crime" area of Flint and that the police commonly received "shots fired" calls from that area. (*Id.* at 12:21-13:2).

Based on these facts, the Court concludes that Trooper Stokes had a reasonable suspicion that Defendant was armed and dangerous. Accordingly, the Court need not address Defendant's objection to the Magistrate Judge's alternative grounds for rejecting Defendant's Motion to Suppress.[1]

---

[1] In *United States v. Everett*, the Sixth Circuit recently addressed an issue of first impression in the circuit – "when, if ever, may an officer conduct questioning during a traffic stop that is (1) unrelated to the underlying traffic violation, (2) unsupported by independent

CONCLUSION & ORDER

The Court **ACCEPTS** the Magistrate Judge's Recommendation that the Court **DENY**

Defendant's Motion to Suppress.  **IT IS ORDERED** that Defendant's Motion to Suppress

Evidence is **DENIED.**

  **IT IS SO ORDERED**.


                              s/Sean F. Cox
                              Sean F. Cox
                              United States District Judge

Dated:  April 21, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on
April 21, 2010, by electronic and/or ordinary mail.

                              s/Jennifer Hernandez
                              Case Manager

---

reasonable suspicion, and (3) prolongs the stop by even a small amount?" *United States v.
Everett*, Case No. 09-5111 at *2 (6th Cir. Apr. 6, 2010).  Because the Court has determined that
Trooper Stokes had reasonable suspicion to justify a *Terry* patdown, the Court will not conduct
further analysis under *Everett*.